UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA L. EACHUS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:15-cv-944 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| WILLIAM "BILL" EDWARD HASLAM, | ) | |
| GOVERNOR OF THE STATE OF | ) | |
| TENNESSEE, IN HIS OFFICIAL | ) | |
| CAPACITY; and JOHN DREYZEHNMER, | ) | |
| M.D., COMMISSIONER OF THE | ) | |
| TENNESSEE DEPARTMENT OF HEALTH, | ) | |
| IN HIS OFFICIAL CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

The defendants – William Haslam, in his official capacity as Governor of Tennessee, and John Dreyzehner, M.D., in his official capacity as Commissioner of the Tennessee Department of Health – have filed a Motion to Dismiss (Docket No. 9), to which the plaintiff – Patricia L. Eachus, M.D. – has filed a Response in Opposition (Docket No. 11), and the defendants have filed a Reply (Docket No. 14). For the following reasons, the motion will be granted.

## FACTS AND PROCEDURAL HISTORY[1]

This action arises out of the Dr. Eachus's employment with the Tennessee Department of Health (the "Department") from 2004 to 2013, during which time, she alleges, the defendants subjected her to a hostile work environment and then terminated her based on her age, gender,

---

[1] Unless otherwise noted, the facts recounted in this section are drawn from the Amended Complaint (Docket No. 7) and are assumed to be true for purposes of evaluating the Motion to Dismiss.

1

and disability, and for her refusal to remain silent about, or participate in, violations of state law. Dr. Eachus is a woman of at least 40 years of age who suffers from lung damage and hearing loss, conditions which she alleges substantially limit one or more of her major life activities and, therefore, constitute a disability under Americans with Disability Act ("ADA").

Dr. Eachus has had a long career with the Department. In 2004, Dr. Eachus was named Public Health Emergency Preparedness Director for the Department, and, in 2011, she was promoted to the position of Public Health Emergency Preparedness Medical Director. The Complaint does not specify Dr. Eachus's duties in this role, but it appears that she assisted with health and medical emergency response activities, collaborated in the writing of federal reports and grant applications, and directed the education and support of statewide personnel.

Dr. Eachus alleges that, in late December of 2012 or early January of 2013, her direct supervisor, Timothy F. Jones, M.D., requested that she take over the supervision of a group of nurse practitioners who were working at the Department Employee Health Clinic. At the time, Dr. Eachus had not "actively practice[ed]" medicine for almost ten years. (Docket No. 7 ¶ 11.) Dr. Eachus advised Dr. Jones that she could not take on the additional responsibility because, to the best of her recollection, the Department's own rules and regulations prohibited anyone other than an actively practicing physician from supervising nurse practitioners. Dr. Eachus then requested, and was granted, permission to speak to a Department attorney, who confirmed to Dr. Jones that Dr. Eachus could not supervise the nurse practitioners.

On April 9, 2013, several months after Dr. Eachus refused to supervise the nurse practitioners at the Employee Health Clinic, both she and Dr. Jones attended a supervisor's meeting. Dr. Eachus alleges that, after the meeting, Dr. Jones came to her office and began to ask her questions about her health, including an issue that Dr. Eachus had recently had with her

eyes. According to Dr. Eachus, Dr. Jones then steered the conversation to the subject of retirement, stating: "I hear you are going to retire." (Docket No. 7 ¶ 10.) Dr. Eachus advised Dr. Jones that she had no plans to retire and, she alleges, he responded by stating that she "need[ed] to retire" and that the Department could not "justify paying [her] on a physician's salary." (*Id.*) Dr. Eachus asked Dr. Jones if his opinion about the need for her retirement was a result of her inability to take over supervision of the nurse practioners, and he nodded his head. Dr. Eachus alleges that she then reminded Dr. Jones that her refusal to supervise the nurse practitioners was not based on her unwillingness to take on additional responsibility but, rather, on the requirements of the Department's rules and regulations.

Dr. Eachus further alleges that, during this meeting, Dr. Jones made "harassing and threatening assertions" that "someone" in the office had been monitoring Dr. Eachus's calendar and had found it to be populated with "useless meetings." (*Id.* ¶ 12.) When asked, however, Dr. Jones refused to provide Dr. Eachus with any information regarding the identity of this person. Also during the meeting, Dr. Jones accused Dr. Eachus of not "work[ing] hard enough" during the meningitis outbreak that had taken place the previous winter. (*Id.*) Dr. Eachus alleges that she responded by saying that she disagreed with Dr. Jones' characterization and that Dr. Jones' immediate supervisor, David Reagan, M.D., could vouch for Dr. Eachus's efforts at the time of the outbreak. Dr. Eachus then requested a meeting with Dr. Reagan and Dr. Jones to discuss Dr. Jones' accusations.

The requested meeting took place the next day, April 10, 2013. During the meeting, Dr. Reagan allegedly assured Dr. Jones that Dr. Eachus had, in fact, worked very hard during the meningitis outbreak the previous winter. Dr. Eachus took this opportunity to complain to Dr. Reagan about the lack of clarity regarding her job duties and expectations, specifically noting

3

that (1) she had received no interim performance evaluations in more than two years, and (2) Dr. Jones had not formally met with her to discuss her job performance in more than three years. Dr. Reagan concluded that Dr. Jones and Dr. Eachus needed to communicate more effectively, and he instructed them to improve their communication and reconvene in a few weeks. At the end of the discussion, Dr. Reagan noted the possibility of transferring Dr. Eachus to another division of the Department if her relationship with Dr. Jones did not improve.

After this meeting, Dr. Eachus expected that she and Dr. Jones would meet to discuss her job plan and performance, but no such meeting ever occurred. Rather, Dr. Eachus alleges that, in early May of 2013, she began to hear rumors that she had been terminated, which she denied. During this time, Dr. Eachus requested on several occasions to meet with Dr. Jones to discuss her performance and the rumors about her termination, but he repeatedly advised her that he was not available.

It was not until late May of 2013 that Dr. Jones made himself available to meet with Dr. Eachus, requesting that she come to his office on Tuesday, May 28, 2013. Dr. Eachus alleges that, when she arrived for the meeting on May 28, she was required to wait outside of Dr. Jones' office for a period of time. She was then directed by Dr. Jones to a conference room, where Donna Teasley, the Human Resources Officer for the Department, was sitting. According to Dr. Eachus, various papers were placed on the table face-down in front of Ms. Teasley, and Dr. Eachus never picked up these papers or read them. Once in the conference room, Dr. Jones informed Dr. Eachus that she could either sign a letter of resignation and retire or sign a letter stating that her "at will" employment had expired. (Docket No. 9 ¶ 15.) Dr. Eachus refused to resign, retire, or sign any letter, and she told Dr. Jones that she believed he was retaliating against her for her refusal to supervise the nurse practitioners. Dr. Jones then directed

4

Ms. Teasley to escort Dr. Eachus from the building. Dr. Eachus was allowed into her personal office for only a few minutes to pick up her personal effects, and she was not allowed to take her calendar, notebooks, or books for which she had personally paid. Dr. Eachus was then escorted from the building, and she alleges that, as a result of the public manner in which she was led out of the building, she suffered extreme humiliation, personal anguish, and embarrassment.

Dr. Eachus alleges that, under Tennessee law, the Department was required to deliver a Separation Notice to her within 24 hours of her separation from employment. Dr. Jones never specifically advised Dr. Eachus during the May 28, 2013 meeting that she was being terminated from her position, and he never gave her a Separation Notice, so Dr. Eachus contends that, after the meeting, she was confused as to her employment status. This confusion increased on June 14, 2013, when she received a formal Separation Notice that stated that she had "quit." (Docket No. 7 ¶ 18.) Dr. Eachus received a corrected Separation Notice on March 5, 2014, almost a year after she was escorted from her place of work, which stated that Dr. Eachus had not quit but, rather, had been discharged.

Dr. Eachus alleges that her position was ultimately filled by a younger male employee, whom she does not identify in the Complaint. Dr. Eachus claims that she does not know when this male employee was hired to fill her position because "the availability of the employment position was not publically advertised." (*Id.* ¶ 20.) When the position later became vacant once again, the State advertised the opening, and Dr. Eachus submitted an application. She never received a response, however, and the position was yet again filled with another younger male employee.

Dr. Eachus filed this action on August 31, 2015 (Docket No. 1), and she filed an Amended Complaint (Docket No. 7) on September 9, 2015 (hereinafter "the Complaint").

5

Neither the original pleading nor the Complaint is a model of clarity, and it is difficult to discern the exact causes of action that Dr. Eachus wishes to pursue. Based on the other filings in the case, however, the court construes the Complaint as bringing the following claims: (1) the defendants terminated Dr. Eachus on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*;[2] (2) the defendants terminated Dr. Eachus on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3) the defendants terminated Dr. Eachus in retaliation for her refusal to stay silent about, or participate in, illegal activity, in violation of Tennessee common law; (4) the defendants failed to provide Dr. Eachus with reasonable accommodations for her disability – lung damage and hearing loss – in violation of Title I of ADA, 42 U.S.C. § 12111, *et seq.*; and (5) the defendants subjected Dr. Eachus to a hostile and abusive work environment prior to her termination, in violation of Title VII, the ADEA, and Title I of the ADA.[3] (Docket No. 7 ¶¶ 21–36.) The Complaint then requests "[i]njunctive relief," which Dr. Eachus contends includes reinstatement to her position with the Department, "with all attendant

---

[2] The Complaint actually states that the defendants terminated Dr. Eachus "based on *age* and sex in violation of Title VII," but, as the defendants have rightly noted, Title VII only prohibits discrimination on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and not on the basis of age.

[3] It is not entirely clear from the Complaint that Dr. Eachus actually intended to plead a hostile work environment claim under Title VII. The Complaint mistakenly states that the defendants' conduct constitutes a hostile and abusive work environment in violation of "Title VII *of the Americans with Disabilities Act*," clearly incorrectly referencing two unconnected statutes. (Docket No. 7 ¶ 36.) Dr. Eachus's presentation of her theory of the case in the Initial Case Management Order indicates that she intended to bring both a Title VII claim and an ADA claim related to the allegedly hostile environment. (Docket No. 15, p.1 ("Defendants' conduct constitutes [a] hostile and abusive working environment in violation of Title VII, the Americans with Disabilities Act and the ADEA.")). Overlooking the error and giving the Complaint the most generous reading, the court construes it to attempt to plead both causes of action.

back pay,[4] benefits and other privileges of employment"; compensatory damages related to Dr. Eachus's humiliation and anguish; and costs and reasonable attorneys' fees. (*Id.* at p. 13.)

On September 18, 2015, shortly after Dr. Eachus filed the Complaint, the defendants filed a Motion to Dismiss all claims (Docket No. 9) along with a supporting Memorandum (Docket No. 10), raising three general arguments: (1) that Dr. Eachus waived all of her claims when she chose to file a complaint with the Tennessee Claims Commission (the "TCC") based on her allegedly unlawful termination, and her claims are therefore barred for lack of subject matter jurisdiction; (2) that Dr. Eachus's claims for monetary damages under the ADA and ADEA are barred by the defendants' sovereign immunity; and (3) any of Dr. Eachus's remaining causes of action fail to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6).[5] (Docket No. 10.) In support of the waiver argument, the Memorandum attaches a copy of Dr. Eachus's TCC Complaint (filed on March 6, 2015), in which Dr. Eachus alleges that she was terminated in retaliation for filing a workers' compensation claim (Docket No. 10-1 (TCC Complaint)),[6] a theory of the case alleged in Dr. Eachus's original pleading in

---

[4] The Complaint characterizes back pay as a type of "[i]njunctive relief," but the court notes that it is rightfully characterized as a type of monetary relief.

[5] The defendants argue primarily that Dr. Eachus's hostile work environment causes of action fail to state a claim under Rule 12(b)(6), but they never specifically argue that her cause of action for failure to provide reasonable accommodations under the ADA fails to state a claim. This is likely due to the fact that the Complaint contains no reference to any accommodation for her alleged disability that Dr. Eachus claims she needed, and the Complaint is not, as the court has already noted, a model of clarity. In their Motion, the defendants indicate that they are seeking dismissal of every cause of action in the Complaint, and so the court will consider whether each of the claims that Dr. Eachus has *not* waived should be dismissed.

[6] In reviewing a motion to dismiss, the court may take judicial notice of other court proceedings that are matters of public record without invoking Federal Rule of Civil Procedure 12(d) and converting the motion to one for summary judgment. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). Neither party has – or could – dispute that Dr.

7

this action (Docket No. 1 ¶ 15) but subsequently dropped in the Complaint.[7] On October 2, 2015, Dr. Eachus filed a Response in Opposition to the defendants' Motion, in which she argued, among other things, that her current claims should not be deemed waived because (1) she did not finish exhausting her federal claims with the Equal Employment Opportunity Commission ("EEOC") until after the statute of limitations had run on her state claims and, therefore, she could not have brought all of her claims in one forum; and (2) the claim submitted to the TCC was not based on the same act or omission as the claims currently before this court. (Docket No. 11, pp. 2–5.) Dr. Eachus attached to her Response documents demonstrating that she filed her charge with the EEOC on September 12, 2013 but did not receive her right to sue letter from the agency until June 2, 2015. (Docket Nos. 11-1, 11-2.) On October 14, 2015, the defendants filed a Reply in Support of their Motion to Dismiss. (Docket No. 14.)

## **RULE 12(b)(1) MOTION TO DISMISS**

**I.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of lawsuits for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The defendants dispute the court's subject matter jurisdiction on the basis of fact; specifically, the defendants argue that Dr. Eachus waived her claims when she filed

---

Eachus's filings with the TCC are a matter of public record, and the court, therefore, will take judicial notice of them.

[7] The Complaint also does not include allegations from Dr. Eachus's original pleading that her lung damage and hearing loss were "caused by her long-time exposure to toxic mold in the Cordell Hull Building where she worked," and that she filed a workers' compensation claim based on those injuries on May 15, 2013, thirteen days before the May 28, 2013 meeting with Dr. Jones. (Docket No. 1 ¶ 15.)

a complaint with the TCC. When "considering a factual attack upon the court's jurisdiction, no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Dunn v. Spivey*, No. 2:09–0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009) (internal citation and quotation marks omitted). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330. "[T]he entity asserting [sovereign] immunity has the burden to show that it is entitled to immunity, *i.e*., that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

## II. <u>Analysis</u>

### A. **Waiver of Claims Based on the Plaintiff's Filing with the TCC**

With the passage of the Tennessee Claims Commission Act, the State of Tennessee provided plaintiffs with the opportunity to file with the TCC causes of action for monetary damages against the state, claims that plaintiffs are not otherwise able to pursue in federal or state courts due to the sovereign immunity that the State typically enjoys under the Eleventh Amendment. *See* Tenn. Code Ann. § 9-8-301 *et seq.* In exchange, by filing a claim with the TCC, a plaintiff waives her right to "any cause of action, based on the same act or omission, which the [plaintiff] has against any state officer or employee." *Id.* § 9-8-307(b); *accord Huskey v. Tennessee*, No. 3:08-cv-0002, 2008 WL 2924310, at *2 (E.D. Tenn. July 24, 2008) ("The waiver provision of Tennessee Code Annotated § 9-8-307(b) is designed to prevent a plaintiff from receiving duplicative or inconsistent judgments in different tribunals for the same injury."). The defendants argue that, because Dr. Eachus elected to file a complaint with the TCC alleging that she had been wrongfully terminated, she waived all of the claims currently before the court and, therefore, the court has no jurisdiction over them. (Docket No. 10, p. 2.)

9

Dr. Eachus does not dispute that she filed a claim with the TCC in which she alleged that she was terminated in retaliation for filing a workers' compensation claim. The only matter before the court, then, is to determine which, if any, of Dr. Eachus's claims before this court are "based on the same act or omission" as her claim before the TCC. The Sixth Circuit has considered the waiver provision of the Act and held that, "where the plaintiff elects to sue the state before the Tennessee Claims Commission, [s]he waives any cognate federal cause of action." *White by Swafford v. Gerbitz*, 860 F.2d 661, 662 (6th Cir. 1988). This does not mean that the state and federal actions "have to share the same legal or theoretical foundation," and a claim is waived when the same "acts" by the defendants form the basis of the claim before the TCC and a claim before another court. *Thomson v. Harmony*, 65 F.3d 1314, 1319 (6th Cir. 1995).

Dr. Eachus's complaint with the TCC is wholly based on her allegedly wrongful termination from her position with the Department, and so she has waived all claims that are based on that termination, including her claims that the defendants terminated her (1) on the basis of her sex in violation of Title VII; (2) on the basis of her age in violation of the ADEA; and (3) for refusing to stay silent about, or participate in, illegal activity in violation of Tennessee common law. Indeed, Dr. Eachus appears to concede in her Response that her claims based on discriminatory or retaliatory discharge are waived, stating that "the claims before this Court do not rely upon [her] termination to state a cause of action" but, rather, "are based upon [the] [d]efendants' discrimination, harassment, and intimidation of Dr. Eachus" and their "failure to provide reasonable accommodations" for her disability. (Docket No. 11, pp. 4–5.)

Dr. Eachus argues that she should be relieved from her waiver because, otherwise, she has been "deprive[d] . . . of an opportunity to file her claims." (Docket No. 11, p. 3.) Dr. Eachus

claims that the statute of limitations ran on her state law claim on March 5, 2015, one year after she received the corrected Separation Notice but two months before she received her right to sue letter from the EEOC, which would have allowed her to bring all of her claims in one proceeding. (*Id.*)[8] According to Dr. Eachus, she was thereby "put in the untenable position on March 5, 2015 of either giving up her right to file a retaliatory discharge claim under Tennessee law or give up her right to file her Title VII and ADA claims under federal law." (*Id.* at pp. 3–4.)

Although the court is sympathetic to Dr. Eachus's predicament, the court is not aware of any legal precedent that would allow Dr. Eachus to negate her waiver of her claims, and there are certain justifications for not allowing her to do so. First, filing a claim with the TCC is purely elective, and it is a choice that plaintiffs make so that they can recover damages on claims that would otherwise be barred by sovereign immunity. There was nothing requiring Dr. Eachus to file with the TCC instead of with another state court, where she could have asked the court to stay proceedings on her state law claims until the EEOC had completed its administrative proceeding. *Cf. Johnson v. Ry. Express Agency*, 421 U.S. 454, 465 (1975) (recognizing that a statute of limitations could have the effect of pressing claimants into court before the EEOC had completed its administrative proceeding and that "[o]ne answer to this, although perhaps not a highly satisfactory one, is that the plaintiff . . . may ask the court to stay proceedings [in the state action] until the administrative efforts at conciliation and voluntary compliance [with respect to the Title VII claim] have been completed"). Second, Dr. Eachus could have requested her right

---

[8] Because the defendants have raised a factual attack on the court's jurisdiction under Rule 12(b)(1), "the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Dunn*, 2009 WL 1322600, at *3. The defendants have not disputed the authenticity of the EEOC documents that Dr. Eachus has attached to her Response, nor are those documents material to the court's ultimate conclusion that Dr. Eachus waived her claims relating to her termination.

11

to sue letter from the EEOC only 180 days after she filed her charge.  29 C.F.R. § 1601.28(a)(1).  If she had diligently pursued this option, she could have requested her right to sue letter in March of 2014, a full year before she claims that the statute of limitations ran on her retaliatory discharge claims.  The court, therefore, cannot and will not grant Dr. Eachus relief from the waiver of her claims based on her termination.

For the foregoing reasons, the court concludes that it does not have jurisdiction over the claims that Dr. Eachus has waived, namely that the defendants terminated her (1) on the basis of her sex in violation of Title VII; (2) on the basis of her age in violation of the ADEA; and (3) for refusing to stay silent about, or participate in, illegal conduct in violation of the common law of Tennessee.  Accordingly, the court will dismiss these claims with prejudice.  The court cannot, however, conclude that Dr. Eachus's claims of failure to provide reasonable accommodation and hostile work environment under the ADA, ADEA, and Title VII were also waived by the filing of the complaint with the TCC.[9]  To so find would be to read the waiver provision of the Tennessee Claims Commission Act too broadly.

### B. Eleventh Amendment Immunity and the Plaintiff's Claims for Damages

The defendants argue that, as state officials sued in their official capacity, they are entitled to Eleventh Amendment immunity from Dr. Eachus's ADEA and ADA claims.  The court will not reach this argument because, as discussed above, Dr. Eachus's claims for discriminatory discharge under the ADEA and ADA have been waived, and as discussed below, the Complaint fails to state a claim upon which relief can be granted for the remaining claims.

---

[9] In deciding that Dr. Eachus has not waived her failure to provide reasonable accommodation and hostile work environment claims, the court assumes that these claims are not based on her termination.  To the extent that these claims are later revealed to be based on Dr. Eachus's termination, however, they would be waived.

# RULE 12(b)(6) MOTION TO DISMISS

I. **Legal Standard**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *accord Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *accord Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

II. **Analysis**

The court now turns to the question of whether Dr. Eachus's remaining claims – for

hostile work environment under Title VII, the ADA, and the ADEA, and for failure to accommodate Dr. Eachus's disability under the ADA – have been sufficiently pled to state a plausible claim for relief. For the reasons discussed below, the court finds that the Complaint does not contain sufficient factual allegations relating to the claims for hostile work environment or lack of reasonable accommodation and, therefore, these claims will also be dismissed.

A. **Hostile Work Environment Claims**

Dr. Eachus alleges that "[t]he [d]efendants' conduct . . . constitutes [a] hostile and abusive working environment in violation of Title VII[, ] the Americans with Disabilities Act and the ADEA." (Docket No. 7 ¶ 36.) Under all three statutes, claims for hostile work environment are analyzed similarly. To state a claim, a plaintiff must allege that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment based on membership in that class, (3) the harassment created a hostile work environment, and (4) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (Title VII); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996) (ADEA); *Hafford v. Seidner*, 183 F.3d 506, 512–13 (6th Cir. 1999) (ADA). A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Randolph*, 453 F.3d at 733 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In support of her argument that she was subjected to a hostile work environment, Dr. Eachus points to the following allegations in the Complaint, which she claims constitute "harassments" that were explicitly or implicitly tied to her age and disability: (1) Dr. Jones' telling her during their April 9, 2013 meeting, "I hear you are going to retire," and "you need to retire"; (2) Dr. Jones' asking her questions about her health, including an eye problem, during

14

their April 9, 2013 meeting; and (3) Dr. Jones' having someone watch her calendar and telling her that it was populated with "useless meetings." (Docket No. 11, pp. 7–11.) These allegations, however, fall far short of establishing a claim for hostile work environment. First, it is difficult to characterize these isolated statements and questions as "harassing" or "threatening." Rather, these allegations reveal, at most, the kind of "simple teasing" or "offhand comment" that do not, as a matter of law, create a hostile work environment. *Randolph*, 453 F.3d at 733. Second, none of these allegations indicates harassment that is actually based on or motivated by sex, gender, or disability. These statements are not overtly based on Dr. Eachus's age, sex, or disability, nor do they support a conclusion that, but for Dr. Eachus's age, sex, or disability, these incidents would not have occurred. *See Pusey v. United Parcel Serv., Inc.*, 393 F. App'x 366, 369 (6th Cir. 2010) ("[P]laintiff must show that the harassment was overtly racial or sexual in nature, or must establish that 'but for the fact of her sex [or race], she would not have been the object of the harassment." (quoting *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009))). Finally, these allegations do not indicate a workplace that is so "permeated" with discriminatory intimidation, ridicule, and insult as to constitute a violation. Rather, Dr. Jones' statements and conduct, which occurred primarily during one meeting, constitute "mere offensive utterances," isolated in occurrence, which do not give rise to a hostile work environment claim. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). Accordingly, the court will dismiss Dr. Eachus's hostile work environment claims for failure to state a claim.

    **B.    Failure to Accommodate Claim**

Dr. Eachus alleges that, because of her lung damage and hearing loss, she has a disability within the meaning of the ADA, and the defendants failed to provide her with reasonable accommodations for that disability. (Docket No. 7 ¶¶ 29–34.) The ADA prohibits an employer

from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination" under the ADA includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* at § 12112(b)(5)(A); *accord Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). A plaintiff asserting a claim of failure to accommodate under the ADA must show that she (1) has a disability, (2) was qualified for her job, and (3) requested a reasonable accommodation and was denied, or was subject to an adverse employment decision that was made solely because of her disability. *Dumas v. Hurley Med. Ctr.*, 837 F. Supp. 2d 655, 665–66 (E.D. Mich. 2011); *Jackson v. O'Reilly Auto. Stores, Inc.*, No. 3:12-cv-1215, 2014 WL 993269, at *6, 8 (M.D. Tenn. Mar. 12, 2014).

The court is not able to discern any factual allegations in the Complaint that would support any of the elements of this cause of action beyond Dr. Eachus's allegation that she has a disability because she suffers from lung damage and hearing loss. The Complaint contains a series of conclusory allegations that form a "[t]hreadbare recital[] of the elements" of a failure to accommodate claim, *Iqbal*, 556 U.S. at 678–79, but it does not contain any factual allegations describing or identifying any accommodation that Dr. Eachus needed in order to be able to perform her duties, the reasonableness of that accommodation, any request she made for that accommodation, or any denial by the defendants of her request. Accordingly, Dr. Eachus has failed to state a claim for failure to provide reasonable accommodation under the ADA, and this claim will be dismissed.

## **CONCLUSION**

For the reasons discussed herein, the defendants' Motion to Dismiss will be granted. Dr. Eachus's claims of discriminatory discharge under Title VII and the ADEA, and her claim of retaliatory discharge under Tennessee common law will be dismissed with prejudice. Dr. Eachus's claims of hostile work environment under Title VII, the ADEA, and the ADA, and her claim of failure to accommodate under the ADA will be dismissed without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge